## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| **JOHN A. FRALEY** | ) | |
| | ) | |
| | ) | |
| **Plaintiff,** | ) | **Civil Action No. 3:08-cv-00016** |
| | ) | |
| **v.** | ) | |
| | ) | **Judge Kim R. Gibson** |
| **UNITED STATES OF AMERICA,** | ) | |
| **Defendant.** | | |

### MEMORANDUM ORDER

### I.     INTRODUCTION

Civilian bus driver John A. Fraley suffered injury following a violent collision with a Pennsylvania Army National Guardsman during a bus trip home from Louisiana following federally managed Hurricane Katrina duty. Mr. Fraley filed this instant personal injury action against the United States, pursuant to the Federal Tort Claims Act (FTCA).[1] Defendant United States now moves to dismiss that claim on the basis that this Court lacks jurisdiction over this dispute, because of Plaintiff's alleged failure to properly exhaust his administrative remedies. Because the Court finds that Plaintiff did not fail to exhaust his administrative remedies, as discussed *infra*, Defendant's Motion will be **denied.**

### II.     RELEVANT FACTUAL HISTORY.

For the limited purposes of adjudication of this Motion, the Court will briefly summarize the relevant facts.

---

[1] 28 U.S.C. §§ 2671, *et seq.*

The general story, as culled solely from the Complaint, may be outlined as follows. At the time of the incident, Mr. Fraley operated a bus carrying members of the Pennsylvania Army National Guard on a return trip from Louisiana to Pennsylvania.[2] Apparently, some Guardsmen[3] adopted a stray dog while in Louisiana. On the morning of October 6, 2005, certain Guardsmen, via chase, attempted to catch the dog, who was running loose on the bus. During this melee, an unidentified Guardsman barreled into Mr. Fraley, knocking him out of the bus and onto the pavement.

According to the Complaint, as a result of this collision, Mr. Fraley was "violently shaken and suffered severe, serious and permanent injuries and permanent impairment of bodily functions . . . ." Doc. No. 1, ¶ 13. Such injuries included: blunt force trauma to head, neck and lower extremities, closed head injury, concussion, blurred vision, injury to cervical spine, tear of posterior horn of medial meniscus, right and left knees, arthrosporic surgery, meniscectomy and chondroplasty, left and right knees, early chondrosis medial compartment, right and left knees, right shoulder pain, headaches, low back pain, neck pain, leg pain, shock to nerves and system, and possible total knee arthrosis in the future. Furthermore, Mr. Fraley states that following damages: "great pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life's pleasures"; "large sums of money for surgical and medical attention, including physical therapy, hospitalization, medical supplies, surgical appliances, medicines and attendant's services;" "loss of wages and earning capacity"; and impairments to his "general health, strength, and vitality." Doc. No. 1, ¶ 14.

---

[2] On September 7, 2005 Federal Authorities deployed National Guard personnel under federally funded status pursuant to 32 U.S.C. § 502(f). The parties agree that the Guardsmen deployed under this Order became federal employees for the purposes of the FTCA. *See* discussion, *infra*.

[3] The Court apologizes for the use of the androcentric term "Guardsmen", which is only used for purposes of concision. The Court fully acknowledges the contributions of female members of the National Guard; however, the Court is constrained by the limitations of language and wary of the awkwardness of repeated mentions of both genders.

2

Plaintiff alleges that the United States "breached its duty to supervise and control the members of the Pennsylvania National Guard"; furthermore, Plaintiff alleges that the Guardsmen breached their duty of care as to him by allowing transport of the stray dog on the bus, failing to restrain the dog on the bus, failing to establish restrictions on the transportation of stray dogs on the bus; negligently controlling the dog on the bus, failing to supervise the Guardsmen on the bus, and failing to remove the dog from the bus. Doc. No. 1, ¶ 14.

Plaintiff further alleges that the United States is responsible for the negligent actions of the members of the Pennsylvania National Guard, and that their negligence was the proximate cause of Plaintiff's injuries. Plaintiff demands judgment in an amount in excess of $75,000.00 Doc. No. 1, pp. 8-9.

## III. RELEVANT PROCEDURAL HISTORY

On March 31, 2006, Plaintiff mailed a letter to the Pennsylvania Department of Military and Veteran Affairs, Pennsylvania National Guard. Doc. No. 14, ex. A. This letter included a full description of the incident, and noted Plaintiff's intent to file suit. *Id.* at 2. Plaintiff received a response, in a letter dated April 6, 2005, from claims supervisor Dennis J. Bavaria, of the Tort Claims Pre Litigation Division of the Commonwealth of Pennsylvania Department of General Services. Doc. No. 14, Ex. B. In this letter, Mr. Bavaria acknowledged receipt of the letter, and denied the claim, arguing that the claim was prohibited by the Doctrine of Sovereign Immunity. *Id.*

On October 1, 2007, FEMA received an administrative tort claim filed by Plaintiff, dated September 24, 2007. *See* Doc. No. 12, Ex. A, pp. 15-19. This claim included a letter, a form (SF-95), and medical records. *Id.* In a letter dated November 7, 2007, FEMA responded to Plaintiff's attorney, stating that the letter constituted "final denial" of the claim. *Id.* at p. 20. FEMA argued first

3

that the claim had not been presented, and averred the following: 1) the claim failed to provide documentation memorializing the representative capacity of the Plaintiff's attorney; 2) the claim failed to state a "sum certain" in the damages section of the claim; 3) the claim was filed with the wrong agency; 4) no FEMA employee was involved in the incident; and 5) Plaintiff should direct his claim to the Pennsylvania National Guard. *See id.* Specifically, the letter also claimed that "the Federal Tort Claims Act (FTCA) is only applicable to damages caused by federal government employees conducting the business of the federal government. Members of the Pennsylvania National Guard are not federal government employees. Therefore, you will need to direct your claim to the Pennsylvania National Guard, if you have not already done so." *Id.* Furthermore, the letter notified Mr. Fraley that if he was dissatisfied with this final denial, he could "file suit in an appropriate United States District Court no later than six months from the date of mailing of this notification." *Id.*

On November 26, 2007, Plaintiff's counsel responded to FEMA. Doc. No. 12, ex. A, pp. 20-22. This letter provided the requested documentation and clarified the total amount of damages requested. *Id.* This letter also expressed frustration over FEMA's claim that it was not the proper agency to adjudicate the claim. *Id.*

On January 24, 2008, Mr. Fraley filed a Complaint in this Court against the Federal Emergency Management Agency (FEMA). Doc. No. 1. On September 3, 2009, FEMA filed a Motion to Substitute Party, requesting that the United States of America be substituted as the sole Defendant in this matter. Doc. No. 9. The Court granted this Motion on September 8, 2009. Doc. No. 10. Under the plain language of 28 U.S.C. § 2679, the United States, and not an agency of the United States, is the only proper defendant in a tort action alleging wrongful conduct of federal

4

employees. Also on September 8, 2008, Defendant United States filed a Motion to Dismiss Plaintiff's Complaint, along with a supporting brief. Doc. Nos. 11 and 12. Plaintiff opposed the Motion to Dismiss at Doc. Nos. 13 and 14. Defendant United States filed a reply brief at Doc. No. 17. The matter is now ripe for adjudication.

## IV.    JURISDICTION AND VENUE

This Court exercises jurisdiction over this dispute pursuant to 28 U.S.C. § 1346(b)(1). Additional jurisdictional issues are discussed throughout this Memorandum Order.

## V.    STANDARD OF REVIEW

A motion to dismiss pursuant to Rule 12(b)(1) "raised the fundamental question [of] whether the federal district court has subject matter jurisdiction over the action before it." 5B Wright & Miller, Federal Practice and Procedure § 1350 (2009). Most district courts interpret an argument that a plaintiff failed to exhaust administrative procedures as a jurisdictional issue. *Id.*

Under Rule 12(b)(1), a Defendant may challenge the court's jurisdiction either facially or factually. *See Davis v. Soc. Sec. Admin*, 2003 WL 21219821, at *1 (D. Del. May 20, 2003) (citing 2 James W. Moore, *Moore's Federal Practice* § 12.30[4] (3d ed.1997)). Where a defendant brings a facial challenge, the court must accept as true the allegations contained in the complaint. *See id.* However, in the matter *sub judice*, Defendant brings a factual challenge; therefore, the Court may "consider affidavits, depositions, and testimony to resolve factual issues bearing on jurisdiction." *Gotha v. United States*, 115 F.3d 176, 179 (3d Cir.1997); *see also Mortensen v. First Fed. Sav. & Loan Ass'n.*, 549 F.2d 884, 891-92 (3d Cir.1977) (explaining that because a trial court's power to hear a case is at issue in a factual 12(b)(1) motion, the court is free to weigh evidence beyond the plaintiff's allegations). Under this standard of review, "'no presumptive truthfulness attaches to

5

plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims.'" *Davis*, 2003 WL 21219821, at *1 (quoting *Carpet Group Intern. v. Oriental Rug Importers, Ass'n.,* 227 F.3d 62, 69 (3d Cir. 2000).

## VI.   DISCUSSION

### A. Introduction

The question at issue in this motion is whether Mr. Fraley properly exhausted his administrative remedies prior to filing his Complaint in this Court, as is required by the FTCA. Prior to filing his Complaint, Mr. Fraley attempted to file claims with both FEMA and the Pennsylvania Army National Guard; both such claims were denied on non-substantive and incorrect grounds. Now, as Plaintiff seeks an alternative forum in which to present his case, the United States asks this Court to further contribute to the bureaucratic quagmire by again rejecting Mr. Fraley's Complaint on non-substantive grounds. However, as justified both by applicable law and the apparently chimerical concept of common sense, this Court refuses to accept the government's formalism and misreading of applicable statutes, and will allow Plaintiff a forum to air his grievance.

As a preliminary threshold matter, it is important to note that the United States acknowledges that at the time of the incident, the Guardsmen were employees of the federal government for Federal Tort Claims Act (FTCA) purposes.[4] *See* Doc. No. 12, p. 5. The government's brief explains:

> The National Guard is a dual federal and state program. *See Perpich v. United States Dept. Of Defense*, 880 F.2d 11, 14-16 (8th Cir. 1989) (explaining relationship between State and Federal National Guard Programs). In Pennsylvania, the PA National Guard may be called to state active duty by the governor in order to respond to "in-state"

---

[4]The government also claims that it reserves the right to argue that the Guardsmen were not acting within the scope of their employment.

6

emergencies or to requests for assitance from other states. 51 Pa. C.S. § 508(aa) & (b); 35 Pa.C.S. § 7601. Additionally, the PA National Guard may be activated solely in a federal status. *See, e.g.*, 10 U.S.C. § 12304 (President may activate 200,000 National Guard members "to augment active forces for any operational mission."). There is also a hybrid status–known as "Title 32 status"–whereby the National Guard may receive fedreal funding but remain under the control of their governor. 32 U.S.C. § 502(f); *see also CRS Report for Congress: Hurricane Katrina: DOD Disaster Response*, (Sept. 19, 2005) at pp. 6-9 (explaining the different status for National Guard service) (available at http://www.fas.org/sgp/crs/natsec/RL 33095.pdf).

In this case, the PA National Guard was placed in Title 32 Status pursuant to a directive issued by the Acting Secretary of Defense on September 7, 2005. Complaint at ¶ 7; Att. A at 6-14. The explicit language of the FTCA provides that members of the National Guard are "employee[s] of the [Federal] government" when they are "engaged in training or duty" under 32 U.S.C. § 502. *See* 28 U.S.C. § 2671; *Matlack v. Treadway*, 729 F. Supp. 1574, 1576 (S.D. W. Va. 1990) ("The FTCA was amended in 1981 to afford protection from liablity for negligent conduct to 'members of the National Guard while engaged in training or duty under section . . . 502 . . . of Title 32' and to make the United States government liable for such conduct."). Accordingly, because they were engage[d] in duty under Title 32, the PA National Guardsm[e]n in this case may be considered as employees of the federal government for FTCA purposes.

Doc. No. 12, pp. 5-6. This Court accepts the averments of the United States with respect to the status of the Guardsmen, and finds that they indeed were federal employees for purposes of the FTCA. *See* 28 U.S.C. § 2671 (defining "Employee of the government" to include "member of the National Guard while engage in training or duty under section 115, 316, 502, 503, 504, or 505 of title 32 . . . .").

7

## B. Parties' Arguments

### 1. Defendant's Arguments

Defendant United States asserts that "Plaintiff did not properly exhaust administrative remedies because he failed to present a proper administrative claim to the appropriate agency within the FTCA's two-year statute of limitations." Doc. No. 12, p. 1. As a result, the United States claims that the Complaint "must be dismissed for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). *Id.*

In the alternative, the United States requests summary judgment pursuant to Rule 56. Doc. No. 11. Because the United States has not complied with the Western District of Pennsylvania's local rules regarding the filing of a motion for summary judgment, such relief is denied.

### 2. Plaintiff's Arguments

Plaintiff Mr. Fraley argues that he properly presented his claim, and that such claim should have been forwarded to the proper agency; consequently, he avers that this Court may exercise jurisdiction over this dispute. *See* Doc. No. 14. Furthermore, Plaintiff argues that the cases cited by the United States are off-point and inapplicable to the instant factual circumstances. *Id.*

## C. Analysis

### 1. Introduction to Applicable Law

The federal government, including it s agencies, is shielded from tort suits unless it voluntarily waives sovereign immunity. *United States v. Mitchell*, 445 U.S. 535, 538, 100 S. Ct. 1349, 63 L. Ed. 2d 607 (1980). Sovereign immunity emerges from the historical maxim that "the King can do no wrong." *See Russel v. Men of Devon*, 2 T.R. 667, 100 Eng. Rep. R. 359 (1778)

8

(holding that an English town could not be liable for damage caused by a defective bridge). This English legal concept found favor in the early history of this country. *See Chisholm v. Georgia*, 2 U.S. 419, 478, 1 L. Ed. 440 (1793). However, in 1946, Congress passed the FTCA, whereby the federal government elected to waive its immunity for certain tortious actions committed by federal employees. *See Gotha*, 115 F.3d at 179. The FTCA authorizes district courts to adjudicate negligence cases involving tortious actions committed by federal agencies, officers, and employees/ 28 U.S.C. § 1346(b)(1). Claimants proceeding under the FTCA must comply strictly with its terms. *Livera v. First Nat'l State Bank*, 879 F.2d 1186, 1194 (3d Cir. 1989).

Under the FTCA, prior to bringing suit, claimants must first present an administrative claim to the appropriate federal agency and that claim must be fully exhausted. 28 U.S.C. § 2675(a); *see also Deutsch v. United States*, 67 F.3d 1080, 1091 (3d Cir. 1995). Section 2675(a) provides as follows:

> An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office of employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing.

The purpose of Section 2675(a) is to insure that the relevant agency will have notice of the claimant's allegations, so that "it may investigate the claim and respond either by settlement or by defense." *Tucker v. United States Postal Serv.*, 676 F.2d 954, 958 (3d Cir. 1982).

Furthermore, the administrative claim must be filed within two years of the claim's accrual. 28 U.S.C. § 2401(b) ("A tort claim against the United States shall be forever barred unless it is

presented in writing to the appropriate Federal agency within two years after such claim accrues or

unless action is begun within six months after the date of mailing, by certified or registered mail, of

notice of final denial of the claim by the agency to which it was presented."). A claim "accrues" at

the time an injured party learns of the existence and cause of the injury. *United States v. Kubrick*,

444 U.S. 111, 118, 100 S. Ct. 352, 62 L. Ed. 2d 259 (1979).

A hopeful litigant's failure to present the administrative claim within the two-year statutory

time period is a jurisdictional requirement. *See Massieu v. Reno*, 91 F.3d 416, 419 (3d Cir. 1996).

Because the FTCA itself is a waiver of the default sovereign immunity, its procedures have generally

been strictly construed. *See Livera,* 879 F.2d at 1194.

Acting pursuant to the rulemaking authority conferred in 28 U.S.C. § 2672, which facilitates

settlement of a claim, the Attorney General promulgated various regulations which purport to govern

the filing and exhaustion of administrative claims; among such regulations is 28 C.F.R. § 14.2:

> For the purposes of the provisions of 28 U.S.C. 2401(b), 2672, and
> 2675, a claim shall be deemed to have been presented when a Federal
> agency receives from a claimant, his duly authorized agency or legal
> representative, an executed Standard Form 95 or other written
> notification of an accident, accompanied by a claim for money
> damages in a sum certain for injury to or loss of property, personal
> injury, or death alleged to have occurred by reason of the incident;
> and the title or legal capacity of the person signing, and is
> accompanied by evidence of his authority to present a claim on behalf
> of the claimant as agent, executor, administrator, parent, guardian, or
> other representative.

28 C.F.R. § 14.2(a) (2008). Furthermore, 28 C.F.R. § 14.2(b)(1) states:

> (b) (1) A claim shall be presented to the Federal agency whose
> activities gave rise to the claim. When a claim is presented to any
> other Federal agency, that agency shall transfer it forthwith to the
> appropriate agency, if the proper agency can be identified from the

10

> claim, and advise the claimant of the transfer. If transfer is not
> feasible the claim shall be returned to the claimant. The fact of
> transfer shall not, in itself, preclude further transfer, return of the
> claim to the claimant or other appropriate disposition of the claim. A
> claim shall be presented as required by 28 U.S.C. 2401(b) as of the
> date it is received by the appropriate agency.

28 C.F.R. § 14.2(b)(1) (2008).

In 1982, following the lead of the influential Fifth Circuit case *Adams v. United States*,[5] the

Third Circuit examined the 1982 version of 28 C.F.R. § 14.2. *Tucker*, 676 F.2d 954. At the time

*Tucker* was decided, 28 C.F.R. § 14.2 explicitly referenced only 28 U.S.C. § 2672; today, the

regulation references itself as being applicable to Sections 2401(b), 2672, and 2675; consequently,

some of the reasoning of *Tucker* regarding unpalatable conflation of Sections 2672 and 2675 is no

longer applicable. However, *Tucker* also reasoned that the regulations promulgated by the Attorney

General were far beyond what was necessary for a claimant to accomplish proper notice to the

agency at issue, which is the purpose of Section 2675(a), *Tucker*, 676 F.2d at 958; such reasoning

is still relevant.

*Tucker*'s discussion is sufficiently relevant to this matter to quote at length:

> The relevant legislative history indicates two congressional purposes
> in requiring claimants to provide the relevant agency with notice of
> their claims. First, in enacting the notice requirement, Congress
> sought to "ease court congestion and avoid unnecessary litigation,
> while making it possible for the Government to expedite the fair
> settlement of tort claims asserted against the United States."
> S.Rep.No. 1327, 89th Cong., 2d Sess. 6 (hereinafter cited as S.Rep.),
> reprinted in (1966) U.S. Code Cong. & Admin. News, pp. 2515,
> 2516. This efficiency purpose, however, accompanies a second
> purpose "of providing for more fair and equitable treatment of private
> individuals and claimants when they deal with the Government or are

---

[5]*Adams v. United States*, 615 F.2d 285 (5th Cir. 1980).

11

involved in litigation with their Government." S. Rep. At 5, reprinted in (1966) U.S. Code Cong. & Admin. News at pp. 2515-16.

The Section 2675 requirement of filing a claim before instituting suit sought to bring the claimants' allegations to the immediate attention of the relevant agency. S.Rep. at 8, reprinted in (1966) U.S.Code Cong. & Admin.News at 2518. Congress altered the status quo, therefore, because it considered the prior practice, under which a claimant first filed suit, then the United States Attorney referred his or her complaint to the agency, wasteful, time consuming and inequitable. That process artificially crowded the dockets of district courts with claims that would be settled once the United States Attorney conferred with the relevant agency. The situation thus unnecessarily consumed the time of United States Attorneys and subjected deserving plaintiffs to needless delays and attorneys' fees in processing their claims through the federal courts. S.Rep. at 5-6, reprinted in (1966) U.S.Code Cong. & Admin.News at pp. 2515-16.

Congress thought it preferable that claimants go first to the relevant agency. If the agency found settlement to be appropriate and if the case were settled at that point, considerable benefit would accrue to all parties concerned. If no settlement obtained, the claimant could still proceed with his or her claim in federal court.

Final denial (of a presented claim) ... includes instances where partial approval of a claim results in an offer unacceptable to the claimant and rejected by him.... However if the agency fails to act in 6 months, the claimant may at his option elect to regard this inaction as a final denial and proceed to file suit. It is obvious that there will be some difficult tort claims that cannot be processed and evaluated in this 6-month period. S.Rep. at 8, reprinted in (1966) U.S.Code Cong. & Admin.News at p. 2518.

The two congressional purposes are adequately served if the prerequisite administrative claim is only the giving of "notice of an accident within a fixed time." S.Rep. at 7, reprinted in (1966) U.S.Code Cong. & Admin.News at p. 2517. Congress intended the section 2675 requirement of presenting notice to be construed in light of the notice traditionally given to a municipality by a plaintiff who was allegedly injured by a municipality's negligence. Id. Congress deemed this minimal notice sufficient to inform the relevant agency of the existence of a claim.

12

The purpose of this notice (is) ...-* * * to protect the (government) from the expense of needless litigation, give it an opportunity for investigation, and allow it to adjust differences and settle claims without suit. Id. (quoting 18 E. McQuillin, The Law of Municipal Corporations s 53.153, at 545 (3d ed. 1977)). This requisite minimal notice, therefore, promptly informs the relevant agency of the circumstances of the accident so that it may investigate the claim and respond either by settlement or by defense. In addition, as section*959 2675(b) shows, this notice was to include a statement of damages.

An individual with a claim against the United States, therefore, satisfies section 2675's requirement that "the claimant shall have first presented the claim to the appropriate Federal agency" if the claimant (1) gives the agency written notice of his or her claim sufficient to enable the agency to investigate and (2) places a value on his or her claim. S.Rep. at 7, reprinted in (1966) U.S.Code Cong. & Admin.News at p. 2517. See generally 18 E. McQuillin, The Law of Municipal Corporations s 52.153 (3d ed. 1977); Annot. 62 A.L.R.2d 340, 341-51 (1958). This information alone allows the claimant to maintain a subsequent action in the district court following the denial of his or her claim by the agency or the passage of six months. Noncompliance with section 2675 deprives a claimant of federal court jurisdiction over his or her claim.

*Tucker*, 676 F.2d at 958-59.

*Tucker* shows that the requirements of 28 C.F.R. § 14.2 do not necessarily absolutely define this Court's jurisdictional requirements for submission of an administrative claim under § 2675. While the statute requires simple notice, the promulgated regulations purport to require detailed non-substantive actions that are of questionable relation to the statutory language and purpose. Some post-*Tucker* district court opinions within the Third Circuit appear to have carried forward the reasoning present in *Tucker*; in assessing the sufficiency of notice provided by a claim, these courts analyzed the circumstances of the case to determine whether the claim "enables the target agency

13

to pursue avenues of negotiation and settlement." *See, e.g.*, *Leaty v. United States*, 748 F. Supp. 268, 271 (1990). Despite *Tucker*'s clear disavowal of the regulations,[6] and because of the subsequent amendments to the regulations which admittedly, at least arguably, displace some of the basis for the *Tucker* holding, this Court will also directly discuss how those regulations apply, in addition to discussing *Tucker*'s simpler and fairer notice test.

The Court further notes that the post-*Tucker* Supreme Court decision of *McNeil v. United States,* 508 U.S. 106, 110, 113 S. Ct. 1980, 124 L. Ed. 2d 21 (1993) does not specifically address the question of what constitutes proper presentment; furthermore, *McNeil*'s reasoning supports the notion that minimal notice will usually satisfy the presentation requirement of Section 2675(a), while insufficient notice will not and consequently will divest a district court of jurisdiction. *See, e.g.*, *Dynamic Image Tech. v. United States*, 221 F.3d 34, 40 (1st Cir. 2000) (interpreting and applying *McNeil*)

## 2. The Proper Agency for FTCA Claim Submission and Adjudication was the Pennsylvania Army National Guard

Before this analysis proceeds, the Court will first determine which of the myriad federal and state agencies related to this incident was the proper agency to which Mr. Fraley's claim should have been submitted.

After blaming Mr. Fraley's attorney for failing to uncover the appropriate agency with which to file the claim, the United States explains that the appropriate agency is the Pennsylvania Army National Guard, and that such claims are then processed through an "area claim office of the

---

[6]*See Tucker*, 676 F.2d at 959 (explaining that the regulatory requirements "go far beyond" the notice requirement of 28 U.S.C. § 2675).

14

National Guard unit at issue." Doc. No. 12, p. 8. As authority for this explanation, the government cites to Army Regulation 27-20, which is a 122-page document. *Id.* (citing Army Regulation 27-20, Feb. 8, 2008, available at http://www.army.mil/usapa/epubs/pdf/r27_20.pdf).

Regulation 27-20 was promulgated pursuant to 28 C.F.R. § 14.11, which states: "Each agency is authorized to issue regulations and establish procedures consistent with the regulations in this part."

In discussing Regulation 27-20, the United States asserts as follows: "Chapter 6 of this regulation clearly indicates that National Guard claims, such as Plaintiff's, will be processed under the FTCA through an area claim office of the National Guard unit at issue." Doc. No. 12, p. 8. While this Court finds the Army Regulation to be less than "clear,"[7] Section 6-2(a)(2) of Regulation 27-20 helpfully explains: "When ARNG Soldiers perform active duty, they are under Federal command and control, and are paid from Federal funds. For claims purposes, those Soldiers are treated as active duty Soldiers. The NGCA, 32 U.S.C. § 715, does not apply." However, nothing else in Chapter 6 provides insight into this problem.

Furthermore, while the government characterizes this discovery as requiring minimal research, this Court is skeptical of the putative ease of this determination.[8] Army Regulation 27-20 describes itself as being "available in electronic media only and is intended for command levels B, C, D, and E for the Active Army, the Army National Guard,/Army National Guard of the United

---

[7] Despite the use of the always-impressive modifier "clearly" in the government's briefing, this Court cannot find anything that is "clear" anywhere in Chapter 6 of Army Regulation 27-20.

[8] An assessment that is somewhat strengthened by the Pennsylvania Army National Guard's own failure to recognize itself as the proper entity for handling the FTCA claim.

States, and the U.S. Army Reserve." Army Regulation 27-20, p. 5. Therefore, by its own terms, Regulation 27-20 is of limited availability, and is apparently distributed only to "command levels" of certain army-related entities.

Nonetheless, upon further investigation, various other Sections of Regulation 27-20 assist the Court in learning about the Army's stated processes for handling claims such as Mr. Fraley's. First, to handle such claims, the Army designates various "Claims Processing Offices" (CPOs). These CPOs are described as follows: "Claims processing offices (CPOs) are normally small legal offices or ACO subordinate elements, designated by the Commander, USARCS, a CCS or an ACO. These offices are established for the investigation of all actual and potential claims arising within their jurisdiction, on either an area, command or agency . . . ." Regulation 27-2, § 1-5(f).

While the government asserts that Mr. Fraley simply needed to file a claim with the relevant claims processing office of the Pennsylvania Army National Guard, even the Army's own Regulation does not appear to specify exactly how or where to file a claim. The Regulation does not state an address or a contact name. Furthermore, as discussed in detail *infra*, when the facts of the instant case were presented to the Pennsylvania Army National Guard, the Guard itself did not appear to comprehend the proper admini strative route for the claim. Nonetheless, despite the above ambiguities, the Court will take the United States at its word, and assume that the proper agency with which Plaintiff should have filed the claim was the Pennsylvania Army National Guard.

**3. Plaintiff's March 31, 2006 Letter Failed to Properly Present a Claim to the Pennsylvania Army National Guard; Consequently the Denial of the Claim by the Commonwealth of Pennsylvania Did Not Start Section 2401(b)'s Six Month Clock**

As detailed in the above facts section, Plaintiff sent a letter to the Pennsylvania Army

16

National Guard, dated March 31, 2006. Doc. No. 14, ex. 2. This letter stated in part that its intent

was to put the Guard on notice, pursuant to a Pennsylvania statute, of Mr. Fraley's intent to sue.

However, the letter also detailed all of the essential facts of the incident, and should have been

sufficient to put the Guard on notice as to the actual federal nature of the claim.

Despite the seemingly indisputable documents attached as exhibits to the party's filings, there

exists a factual dispute between the parties as to the history regarding the filing of claims. The United

States insists that "there is no indication that Plaintiff filed an administrative claim with the PA

National Guard." Doc. No. 12, p. 8. However, Plaintiff avers as follows:

> With respect to the filing of an Administrative Claim, on
> March 31, 2006, within 6 months of the incident, the Plaintiff sent
> Notice via certified mailing to Pennsylvania Department of Military
> and Veteran Affairs, Pennsylvania National Guard, in both Annville,
> Pennsylvania, and Pittsburgh Pennsylvania. The same Notice went
> to the Pennsylvania Office of Attorney General in Harrisburg.
> Annville would be considered the local office for the Guard Troops
> involved. A copy of the March 31, 2006 letter and the Postal Service
> Form 3811 documenting delivery of that letter on April 3 and April
> 4, 2006 respectively are attached as Exhibit A.
> That by letter dated April 6, 2006, Dennis J. Bavaria, claims
> supervisor, Tort Claims Pre Litigation Division of the
> Commonwealth of Pennsylvania Department of General Services
> responded by letter. They acknowledged the claim but argued that
> such claims were prohibited by the Doctrine of Sovereign Immunity.
> A copy of the April 6, 2006 letter [i]s attached as Exhibit 2.

Doc. No. 14, pp. 1-2.

In response to this averment, the United States argues:

> The March 31, 2006 letter relied upon by Plaintiff fails to
> fulfill the administrative exhaustion requirements of the FTCA.
> [citing letter] by the plain language of the letter, Plaintiff is simply
> providing notice, pursuant to a Pennsylvania statutory notice
> provision, that he intends to file a state court action. There is

> absolutely no reference to the FTCA or any indication that this letter
> was intended to fulfill the administrative exhaustion requirements.
> There was no Standard Form 95 attached or even referenced in this
> letter indicating an intent to begin the FTCA administrative
> exhaustion process.

Doc. No. 17, pp. 1-2.

The matter for consideration now is what effect this letter had upon the issue of

administrative exhaustion. Two potential questions arise: first, whether Mr. Fraley's March 31, 2006

letter may be considered an actual FTCA claim; and second, if so, whether Mr. Fraley was obligated

to file suit in federal court within 6 months of his receipt of the Guard's denial letter. *See* 28 U.S.C.

§ 2401(b) ("A tort claim against the United States shall be forever barred . . . unless action is begun

within six months after the date of mailing, by certified or registered mail, of notice of final denial

of the claim by the agency to which it was presented."). As discussed herein, the Court answers

both questions in the negative, and therefore agrees with the United States that the March 31, 2006

letter fails, by itself, to satisfy the administrative exhaustion requirements.

As discussed above, the Pennsylvania Army National Guard was the correct recipient for Mr.

Fraley's claim; furthermore, his letter was addressed to a specific office within the Pennsylvania

Army National Guard. Whether that was the correct office is not relevant.

However, the March 31, 2006 letter failed entirely to state any sum certain whatsoever, and

consequently did not comply with the presentment and notice requirements of Section 2675(a).

Therefore, this letter cannot be considered a properly presented FTCA claim.

That being said, the failures in the March 31, 2006 letter pale in comparison to the painful

inadequacies of the Pennsylvania Army National Guard's response. As noted above, Mr. Fraley's

18

letter detailed sufficient information to put the Guard on notice of the in-fact federal nature of the claim, regardless of any misstated state-jurisdiction-based aspirations. Consequently, upon receipt, the letter should have been transferred to the appropriate CPO within the Pennsylvania Army National Guard.

As noted above, Army Regulation 27-20, established pursuant to 28 C.F.R. § 14.11 is the Army's own statement of its procedures in handling FTCA claims. Section 1-8 clarifies the "Army claims mission" as follows:

> The Army claims mission is to—
> a. Promptly investigate potential claims incidents with a view to determining the degree of the Army's exposure to liability, the damage potential, and when a third party is at fault, whether the Army should take action to collect for medical expenses, lost wages, and property damage.
> b. Efficiently and expeditiously dispose of claims against the U.S. by fairly settling meritorious claims at the lowest level within the claims system commensurate with monetary jurisdiction delegated, or by denying non-meritorious claims.
> c. Develop a system that has a high level of proficiency, so that litigation and appeals can be avoided or kept to a minimum.

Regulation 27-20, Section 1-8.

Furthermore, Section 2-1(b) states: "Claims investigation requires team effort between the USARCS, command claims services, and ACOs, including U.S. Army Corps of Engineers (COE) district offices, CPOs, and unit claims officers. Essential to this effort is the immediate investigation of claims incidents. Prompt investigation depends on the timely reporting of claims incidents as well as continuous communication between all commands or echelons bearing claims responsibility." Regulation 27-20, Section 2-1(b)

Also relevant, Sections 1-17(a)(4)-(5) and (b) state:

19

(4) *Expeditious processing at the lowest level.* Claims investigation and adjudication should be accomplished at the lowest possible level, such as the CPO or ACO, that has monetary authority over the estimated total value of all claims arising from the incident. The expeditious investigation and settlement of claims is essential to successfully fulfilling the Army's responsibilities under the claims statutes implemented by this publication.

(5) *Notice to claimants of technical errors in claim.* When technical errors are found in a claim's filing or contents, claimants should be advised of such errors and the need to correct the claim. If the errors concern a jurisdictional matter, a record should be maintained and the claimant sho uld be immediately warned that the error must be corrected before the statute of limitations (SOL) expires.

*b. Cooperative investigative environment.* Any person who indicates a desire to file a claim against the United States cognizable under one of the chapters of this regulation will be instructed concerning the procedure to follow. The claimant will be furnished claim forms and, when necessary, assisted in completing claim forms, and may be assisted in assembling evidence. Claims personnel may not assist any claimant in determining what amount to claim.

During claims investigation, every effort should be made to create a cooperative environment that engenders the free exchange of information and evidence. The goal of obtaining sufficient information to make an objective and fair analysis should be paramount. Personal contact with claimants or their representatives is essential both during investigation and before adjudication. When settlement is not feasible, issues in dispute should be clearly identified to facilitate resolution of any reconsideration, appeal or litigation.

Regulation 27-20, Section 1-17(a)(4)-(5) and (b).

These selections from the Army's own regulation suggest that the Army created for itself the responsibility of investigating claims and making claimants aware of technical errors or possible jurisdictional errors within the claim. *See* Army Regulation 27-20, Section 1-17(a)(5) (*"Notice to claimants of technical errors in claim.* When technical errors are found in a claim's filing or contents, claimants should be advised of such errors and the need to correct the claim. If the errors

20

concern a jurisdictional matter, a record should be maintained and the claimant should be immediately warned that the error must be corrected before the statute of limitations (SOL) expires."). However, rather than following its own regulations, the Pennsylvania Army National Guard propagated Plaintiff's mistaken jurisdictional assumption.

If this claims process had operated as envisioned, shortly after the mailing of the March 31, 2006 letter, the Pennsylvania Army National Guard would have contacted Mr. Fraley's representatives, advised them of the federal employee status of the at-issue Guardsmen, and notified them of the need to correct certain errors. This description is not the Court applying its own post-hac standards; rather, such actions would have constituted mere compliance with the Army's own self-established regulations. The United States itself, in its filings before this Court, affirms and acknowledges that with respect to personal injury claims such as this one, against the Pennsylvania Army National Guard, should "be processed in accordance with Army Regulation 27-20." Unfortunately for all parties involved, the Pennsylvania Army National Guard failed to do so; instead, the claim was apparently forwarded to some entity within the Commonwealth of Pennsylvania.

Regardless of these bipartisan failings, the sum legal effect of this part of the story is simple: Plaintiff's March 31, 2006 letter, while providing notice to the Pennsylvania Army National Guard of the existence of a FTCA claim, nonetheless failed to sufficiently comply with the presentment and notice requirements of Section 2675; because of this failure, the subsequent rejection of the claim, itself misguided, could not act as a trigger for § 2401(b)'s six-month clock.

**4. Plaintiff Adequately Presented His October 1, 2007 Claim to FEMA in a Timely Fashion, Which, When Considered in the Context of Other Events and FEMA's Improper**

21

**Response, Yields the Conclusion that Plaintiff Adequately Exhausted His Administrative Opportunities for Redress**

The Court's analysis next turns to Plaintiff's subsequent action, following his dead-end experience with the Pennsylvania Army National Guard. As noted above, Plaintiff filed a Form SF-95 with FEMA, which form was received on October 1, 2007. The United States' briefing emphasizes alleged defects in this claim. This Court will now consider whether any of those defects, or all, taken together, serve to obviate presentment; furthermore, the Court will determine whether Plaintiff constructively complied with the administrative exhaustion requirements, such that this Court may exercise jurisdiction over Mr. Fraley's claim.

**a. The October 1, 2007 Claim Did Not Fail to Present a "Sum Certain"**

As noted above, 28 C.F.R. § 14.2(a) states that a properly presented claim must include a "claim for money damages in a sum certain for injury to or loss of property, personal injury, or death alleged to have occurred by reason of the incident." The Court also notes that *Tucker* indicates that for presentment purposes, a claim gives adequate notice if it allows the agency to place a value on the claim. The United States incorrectly states that Plaintiff's claim failed to contain a "sum certain." However, the form submitted by Plaintiff contained the sum $500,000 listed in section 12b of Form 95. *See* Doc. No. 12, ex. A, p. 17. Consequently, the government's citations and exertions are of zero moment; Plaintiff's October 1, 2007 submission to FEMA properly included a sum certain, which sum gave notice that the claim was worth $500,000. As such, the Court finds that Plaintiff's claim properly complied with the "sum certain" requirement detailed in the regulations; furthermore, Plaintiff's claim gave sufficient information to place specific value upon the claim. *See Tucker*, 676 F.2d at 958-59 (explaining that for presentation purposes, a claim gives adequate notice if it allows

22

the agency to investigate the claim and to place a value on the claim).

The United States cites *Bialowas v. United States* in support of its position that the claim failed to meet the sum certain requirement. 443 F.2d 1047 (3d Cir. 1971). However, *Bialowas* is sufficiently distinguishable on its facts as to have no impact upon this case. In *Bialowas*, the individual submitted a half-filled out claim form to the post office; this individual did not sign the document, date the document, or state any dollar amount whatsoever regarding the claim. *Id.* at 1048. Furthermore, the postal inspectors phoned the applicant, and sent him additional copies of the form, instructing him to submit new forms including specific amounts. *Id.* The applicant never returned those forms. *Id.* In contrast, Mr. Fraley's October 1, 2007 claim, and his overall behavior, bear no similarity to the at-issue document and conduct in *Bialowas*. Furthermore, *Bialowas* is a 38-year-old case, which the Third Circuit has since labeled as carrying a"limited" holding. *Tucker,* 676 F.2d at 960 (3d Cir. 1982).

Also in support of its argument that "[n]umerous courts have held that the failure to include a 'sum certain' in an administrative claim filed pursuant to the FTCA requires dismissal of the federal lawsuit," the United States confusingly cites the non-precedential *Kokaras v. United States*, 980 F.2d 20 (1st Cir. 1992). Doc. No. 12, p. 7. However, *Kokaras* held exactly the opposite of the proposition for which it is cited by the government. *Kakaras* acknowledged the importance of claimants adhering to the sum certain requirement, but then found that the at-issue SF-95 did specify a sum certain. *Kokaras*, 980 F.2d at 21 (explaining that the claimant entered an amount in the "Property Damage" box but no amount in the "Total" box). *Kokaras* criticized the formalism of the government's reaction to this ambiguity in the SF-95: "To throw out the claim entirely, as other than

one for a sum certain, was, on these facts, bureaucratic overkill." *Id.* at 22.

Similarly, it would be bureaucratic overkill to find Mr. Fraley's minor box-filling-in shortcomings as causing a deficient presentment. In the matter *sub judice*, Mr. Fraley's claim included $500,000 in the "Personal Injury 12b" box, but incorrectly stated $0.00 in the 12d "Total" box. Doc. No. 12, ex. 2. While Fraley obviously should have also written $500,000 in the 12d box, his failure to do so is properly seen as a minor ministerial mistake, rather than a substantive mistake that should merit rejection of his entire claim form. Where a sum was obvious on the face of the document, citing the sum certain requirement as a reason for ignoring the claim was a particularly petty display of beadledom by FEMA. *See Jama v. United States Immigration and Naturalization Serv.*, 22 F. Supp. 2d 353, 367 (D.N.J. 1998) ("A claim may be sufficient if a total amount is 'directly inferable' from information presented.") (quoting *Leaty v. United States*, 748 F. Supp. at 269).

In a striking similar situation to the matter *sub judice*, Judge McGlynn of the Eastern District of Pennsylvania excused a claimant who failed to fill in the 12d box, but successfully filled in the 12b box. *McCallum v. United States*, 1986 WL 14217 (E.D. Pa. Dec. 15, 1986). Judge McGlynn explained that while the failure to fill in the 12d box may mean that a "sum certain" was not technically stated, he nonetheless would "apply the stated purposes of the sum certain requirement to these facts in a fashion that is not mechanistic . . . ." *Id.* at *4. Judge McGlynn refused to dismiss the action on the basis of the sum certain requirement. *Id.*

Recently, in reviewing a somewhat analogous situation involving similar bureaucratic unreasonableness, albeit in a non-precedential decision applying a disparate area of law, the Federal

24

Circuit reprimanded an administrative agency and the reviewing district court, for their unfair and formalistic applications of procedural rules. *Taylor v. United States Patent and Trademark Office*, 08-cv-8634, 2009 WL 2372092 (Fed. Cir. Aug. 4, 2009). In *Taylor*, a patentee submitted a maintenance payment for $1030 to the United States Patent and Trademark Office (PTO). The PTO cashed the check. *Id.* The actual fee due was $1040. *Id.* Some years later, the patentee submitted his next maintenance payment; at this point, the PTO informed the patentee that the patent expired some years ago due to the previous check being $10 short; this was the first that the patentee had heard of any sort of problem with the earlier payment. *Id.* Once this problem came to light, the PTO consistently refused to review the matter on the merits. *Id.* The Southern District of New York found that Mr. Taylor did not show that the PTO's actions were arbitrary and capricious. *Id.* However, in reviewing the matter, the Federal Circuit explained that the "PTO was arbitrary and capricious in its failure to notify Mr. Taylor of the minor insufficiencies in his attempted payment of a patent maintenance fee . . . ." *Id.* The Federal Circuit's reasoning emphasized the "reasonableness of [Mr. Taylor's] course of action" during the procedures, and contrasted those actions with the unreasonableness of the PTO. *Id.* Obviously, both the procedural posture and the facts of *Taylor v. PTO* differ from Mr. Fraley's situation; however, the reasoning applied in *Taylor v. PTO* demonstrates that at some point, the judiciary may employ equitable principles to set bounds on the extent to which government actors are allowed to bind citizens in red tape.

**b. October 1, 2007 Claim's Failure to Include Documentation Memorializing Attorneys' Authority Does Not Preclude Valid Presentment**

The United States then suggests that Plaintiff's failure to include a statement of representation is a specific requirement mandated by 28 C.F.R. § 14.2, and that failure to comply

"can lead to rejection of the claim." Doc. No. 12, p. 8  However, upon closer review of the relevant regulation, the Court discovers that the actual language states that a presented claim must be ". . . accompanied by evidence of his authority to present a claim on behalf of the claimant as agent, executor, administrator, parent, guardian, or other representative . . . ." 28 C.F.R. § 14.2; *see also Waddington v. United States*, 2008 WL 2522430 (E.D. Pa. June 24, 2008) ("[I]t is unclear whether failure to provide evidence of authority to act on behalf of the claimant with a Form 95 Claim under 28 C.F.R. § 14.2(a) deprives a court of jurisdiction to entertain an FTCA claim, where the claimant has otherwise presented her claim with a sum certain to the appropriate federal agency under 29 U.S.C. § 2675(a).").

In the SF-95 form submitted by Mr. Fraley, under the box entitled "Name, Address of claimant and claimant's personal representative if any," the form stated the following:"Michael J. Koehler, Esquire, 2527 W. 26th St., Erie, PA 16506; John Fraley, 405 Spankle Ave., Altoona PA." Doc. No. 12, ex. A, p. 17.  Applying the plain language of the regulation, which requires only "evidence of" the attorney's authority to present the claim, this Court finds that Mr. Koehler's signature is properly viewed as his verifiable word that he in fact represents Mr. Fraley in this action. When combined with Mr. Koehler's status as a Pennsylvania-licensed attorney, this signature is sufficient "evidence" of the required agency relationship; furthermore, FEMA later sent a letter to Mr. Koehler, which action was an explicit acknowledgment that FEMA understood that Mr. Koehler was Mr. Fraley's advocate. *See Waddington v. United States*, 2008 WL 2522430 (E.D. Pa. June 24, 2008) (finding that United States Postal Service had sufficient notice of attorneys' representation, because of attorney's signature on Form 95 and USPS treatment of attorney as representative).

**c. Whether Claim was Submitted to Proper Federal Agency Is Not Determinative of Presentment: FEMA was Obligated to Transfer the October 1, 2007 FTCA Claim to the Appropriate Division of the Pennsylvania Army National Guard**

The United States then argues that the claim was not submitted to the proper federal agency on October 1, 2007. "A claim shall be presented as required by 28 U.S.C. 2401(b) as of the date it is received by the appropriate agency." 28 C.F.R. § 14.2(b) (1). However, 28 C.F.R. § 14.2(b) also provides that the receiving agency, if not the appropriate agency, should transfer or return the claim "forthwith."

Having received a properly presented FTCA claim, pursuant to the plain language of governing law, FEMA was obligated to transfer this matter directly to the appropriate receiving office of the Pennsylvania Army National Guard. Such a transfer occurs pursuant to the relevant regulation, 28 C.F.R. § 14.2(b)(1), which states that "[w]hen a claim is presented to an [improper Federal agency], that agency shall transfer it forthwith to the appropriate agency, if the proper agency can be identified from the claim, and advise the claimant of the transfer." Under such circumstances, the claim will be deemed "constructively filed." *See Greene v. United States*, 872 F.2d 236 (8th Cir. 1989); *Bukala v. United States*, 854 F.2d 201 (7th Cir. 1988).

Here, despite the government's arguments to the contrary,[9] the claim was presented to FEMA, and, given the wealth of information provided on the form submitted by Mr. Fraley, FEMA, with some research, should have identified the proper agency and transferred the claim. In the alternative, FEMA should have more promptly returned the claim to Mr. Fraley, with an accurate

---

[9]The United States claims that FEMA was not obligated to transfer the claim, because it had not been properly presented; however, as discussed *supra*, the claim was adequately presented.

explanation of the proper agency with which to file. The governing federal regulation obligated FEMA to do as such; as a consequence of FEMA's failure, this Court may elect to treat the claim as having been constructively filed with the appropriate agency as of October 1, 2007. Such a finding of constructive filing means that Mr. Fraley's claim satisfies the FTCA administrative claim procedure such that this Court may exercise jurisdiction over this claim. *See Greene v. United States*, 872 F.2d 236, 237 (8th Cir. 1989) ("Because [claimant's] claim was timely filed, albeit with the wrong agency, and because [the wrong agency] failed to transfer or return the claim, her claim satisfies the FTCA administrative claim procedure.)"

In opposition to such a finding, the United States argues that constructive filing cannot occur where a claim is filed near to the deadline. Doc. No. 12, p. 11("Courts have universally held that 'claimants who wait to the last minute or the eleventh hour and file with the wrong agency cannot take advantage of constructive filing.' [citing three cases].)" None of the cited cases constitute mandatory precedent, and their reasoning, such as it is, would not compel any reasonable judge to apply it to the facts in the instant case.

Furthermore, it seems that cases that refuse to find constructive filing for "eleventh hour" filers typically find factual circumstances that suggest an absence of excusable neglect. Admittedly, in this matter, Mr. Fraley's law firm performed less than admirably in locating the proper avenue for filing an administrative claim. However, much of that problem is properly attributed to the failings of the Pennsylvania Army National Guard to properly know or follow its own administrative procedures. In short, the Court finds Mr. Fraley's story to be highly believable and excusable, including his reasons for and timing of the various filings.

28

Therefore, the Court finds that FEMA acted improperly by failing to transfer the matter "forthwith" to the Pennsylvania Army National Guard. Under this reasoning, Plaintiff's properly presented claim was constructively submitted to the proper Federal entity on October 1, 2007, and consequently, this Court finds that Mr. Fraley did his part in properly exhausting his administrative remedies; therefore, this Court could not, in good conscience and while paying allegiance to both the text and purpose of the governing statute, deny Mr. Fraley a forum for his grievance, simply because of the government's inactions and failures. In short, the best way to look at this episode is one wherein Plaintiff was attempting to obtain administrative adjudication of his claim–and was both misled and improperly served by government actors.

Furthermore, the Court also notes the significance, albeit somewhat uncertain, of Mr. Fraley's first submission to the Pennsylvania Army National Guard; as noted *supra*, this submission did not constitute adequate presentment[10]; however, the submission should have placed the Guard upon notice of an FTCA claim.

## VI. CONCLUSION

Despite the obvious mishandling of this claim by the two federal entities, and by Mr. Fraley, the United States by its motion would now have the Court refuse to consider the substance of this dispute. However, this Court, by the above analysis, elects to exercise its jurisdiction pursuant to Congress's clear language and apparent purpose. The rationale employed by this Court in this case, and by the Third Circuit in *Tucker*, was aptly stated recently by the First Circuit in *Lopez v. United*

---

[10]The claim may have been technically deficient in that it referenced Pennsylvania law rather than the FTCA; however, the letter detailed all of the particulars of the incident such that the Pennsylvania Army National Guard and indeed the United States were properly placed on notice of the existence and particulars of a claim against them.

*States*: "Thus, we approach this case recognizing that individuals wishing to sue the government must comply with the details of the law, but also keeping in mind that the law was not intended to put up a barrier of technicalities to defeat their claims." 758 F.2d 806, 809 (1st Cir. 2001). Despite the clear pragmatic language employed in cases such as *Tucker* and *Lopez*, the United States would now have this Court "put up a barrier of technicalities" to defeat Plaintiff's claim on non-substantive grounds that do not cohere with either the language or purpose of the statutory requirements.

However, by applying a straightforward interpretation of the relevant law, while also considering the purpose of those laws, this Court finds that Mr. Fraley did not fail to exhaust his administrative remedies. Consequently, this Court may exercise jurisdiction over this dispute. It is indeed unfortunate that the government actors in this factual situation failed to adhere to the applicable law, and their own written policies; had such government entities acted properly, the full purposes of the FTCA's administrative exhaustion requirement could have been met via an initial investigation and possible settlement of the claim. Instead, in this Court, Mr. Fraley will now have his statutory right to attempt to prove his negligence claim against the United States, just as against any other party. *See* 28 U.S.C. § 2674 ("The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances . . . .").

Therefore, having construed, considered and applied the relevant statutory framework, in light of mandatory precedent, and after full consideration of the parties' arguments and the factual and procedural setting of the case, the Court **HEREBY ORDERS** that Defendant United States' Motion to Dismiss (Doc. No. 11) IS **HEREBY DENIED**. The Court will schedule an Initial Case

30

Management Conference forthwith to coordinate discovery and other case management issues.


**BY THE COURT:**


**August 20, 2009**

**HONORABLE KIM R. GIBSON**
**UNITED STATES DISTRICT COURT JUDGE**